IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TYRONE HENRY McMILLER,            )
    a/k/a/ HENRY T. McMILLER,       )
        Plaintiff,              )
                                )
                                )   CIV-13-711-W
v.                                )
                                )
JUSTIN JONES, et al.,             )
                                )
    Defendants.                 )

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional deprivations related to his previous confinement at the Oklahoma State Reformatory ("OSR").[1] Defendants have moved to dismiss the cause of action or, alternatively, for summary judgment on the grounds of failure to exhaust administrative remedies and, alternatively, for failure to state a claim upon which relief may be granted. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that Plaintiff's cause of action be dismissed with prejudice due to Plaintiff's failure to exhaust administrative remedies.

I. Background and Claims

According to the records of the Oklahoma Department of Corrections ("ODOC"),

---

[1] Plaintiff is currently confined at the Cimarron Correctional Facility located in Cushing, Oklahoma.

Plaintiff is serving multiple, concurrent 45-year terms of imprisonment entered in 1994. Special Report, Ex. 1. Plaintiff has two consecutive 30-year sentences entered in 1995 to serve in the future. Id.

Plaintiff was transferred to OSR in August 2012. Id. On January 10, 2013, Plaintiff was placed in OSR's segregation housing unit ("SHU") pending investigation of two misconduct offenses. Special Report, Exs. 3, 14. On January 29, 2013, four OSR inmates, Mr. Williams, Mr. Jones, Mr. Chuckluck, and Mr. Sweezy, were involved in an altercation. Special Report, Ex. 6 (Affidavit of Ms. Tiffanie McGill). An OSR official, Ms. McGill, was responsible for arranging housing for Mr. Williams. She determined from reading Mr. Williams' consolidated record card that Mr. Williams was an African-American and placed Mr. Williams in a cell in the SHU with Plaintiff, who is also an African-American. Id.

According to Ms. McGill's affidavit included in the Special Report, because of her knowledge of "tension on the yard and the previous altercation" she asked Plaintiff and Mr. Williams "if there would be any problem with them being housed together" and they assured her and another OSR official, Mr. Eakins, that "they would be capable of being housed together." Id. Mr. Eakins stated on an incident report that Plaintiff and Mr. Williams were confirmed to be of the same race through the ODOC's Offender Management System and both inmates "stated that they did not have a problem being housed together." Special Report, Ex. 5.

However, Plaintiff stated in administrative grievance forms that Mr. Williams "told SHU staff and [Ms.] McGill and Officer Eakins that it would be trouble if he was placed in

2

the cell with me." Special Report, Ex. 22, at 3-4. Plaintiff alleges that Mr. Williams is "of Indian decent [sic] and a known (I.B.H.) Indian Brotherhood Gang member." Complaint, at 11.

Mr. Eakins stated on an incident report that there were "no problems" between the time Plaintiff and Mr. Williams were placed together in the cell at approximately 12:30 p.m. until his shift ended at approximately 2:00 p.m. Special Report, Ex. 5. Ms. McGill avers in her affidavit that "[f]rom 12:30 p.m. to 4:00 p.m. there were eight 30 minute welfare checks that were completed by shift officers [and i]t was never reported that there was any reason to believe an altercation would ensue, there were no complaints of injuries[, ] neither offender made any statement that either were in fear of the other, and neither requested to be moved from the cell." Special Report, Ex. 6.

Two incident/staff reports completed by OSR staff and dated January 29, 2013, reflect that at approximately 4:40 or 4:45 p.m. Plaintiff and Mr. Williams began fighting in their cell, they were ordered by OSR officials to stop fighting, but the fight continued until "OC spray" was used on the inmates to stop the fighting. Response, Exs. 9, 10. The inmates were handcuffed and escorted to the showers for decontamination. Response, Exs. 9, 10. Plaintiff sustained lacerations in his upper back and lower rib cage, which were treated by medical personnel at the prison. Special Report, Ex. 12.

In his Complaint, Plaintiff alleges in count one that his Eighth Amendment rights were violated "when the defendants were deliberately indifferent to the substantial risk of serious harm by placing a violent STG [sic] gang member in my cell knowing that racial tension

3

existed and that action resulted in the plaintiff being violently assaulted." Complaint, at 6. He alleges Defendants Jones, McCollum, Bornheim, Durffy, Tate, Dennis, McGill, Eakins, Ormand, and Gonzalez "all had knowledge of substantial risk and these officials at [OSR] in Granite Oklahoma on 1-29-13 failed to protect me." Id. He contends Mr. Williams was a member of an Indian Brotherhood prison gang and that he had just been apprehended along with Indian Brotherhood gang member Chuckluck and three other Indian Brotherhood gang members for assaulting and stabbing "a black inmate Keith L. Jones . . . in the general population yard at [OSR] during a period of intense gang based wide-spread racial rivalries and conflict between African-American and Indian Security Threat Group gang members." Id. at 6-7.

In count two, Plaintiff alleges that his Fourteenth Amendment equal protection rights were violated "when the defendants intentionally treated me differently from others similarly situated without rational basis." Id. at 6. He alleges Defendants Warden McCollum, Deputy Warden Bornheim, Deputy Warden Durffy, Chief of Security Tate, Captian Dennis, Ms. McGill, Mr. Eakins, Case Manager Ormand, and Unit Manager Gonzalez "all were aware of a strong and high probability of facts indicating that [Mr.] Williams . . . would and planned a attack on me when [Mr.] Williams . . . gave threats that (He would not live with no BLACK inmates else there will be problems)." Id. at 6.

Plaintiff alleges Mr. Williams "told Lt. Mrs. McGill It would be trouble" before Ms. McGill and Mr. Eakins placed Mr. Williams in the cell with me, "violating procedures put in place by the State" and "knowing Offender Williams . . . attacks black inmates when

4

placed in the cell with black members and STG gang members and of his well documented record of racial attacks and stabbings on black inmates for and with the [Indian Brotherhood] prison gang." Id. at 8.

In count three, Plaintiff contends that "[t]he Defendants named herein has [sic] acted with a malicious intent to have harm done to me. They participated in retaliatory conduct and set me up to attempted murder and harm done to me in segregation on 1-29-13." Id. at 10. He traces the alleged retaliatory motive to a previous lawsuit filed by Plaintiff in this Court[2] which names LCF Warden Rick Whitten as a defendant and Mr. Whitten was previously the Warden at OSR. Id. Plaintiff alleges he "believe [sic] that the magnitude and consequences of this action has caused the defendants to use their authority to retaliate against me." Id. He alleges that the "defendants named herein retaliated in concert knowing [Mr.] Williams . . . would attack me." Id. at 11.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most

---

[2]The previous action, of which the Court takes judicial notice, is McMiller v. GEO Group, Inc., et al., No. 12-1060-W. This action, filed in September 2012, remains pending in this Court and involves two fights between Plaintiff and other inmates at the Lawton Correctional Facility. As in this action, in the previous action Plaintiff has alleged violations of his constitutional rights based on the alleged failure to protect him from gang-related offender-on-offender altercations.

favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983

claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

The procedure for exhausting administrative remedies for Oklahoma inmates is set out in ODOC Policy OP-090124. In this grievance policy, ODOC has established a "four-step process for administrative exhaustion of prisoner claims." Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010)(describing steps). The first step requires the inmate to attempt to informally resolve the matter with the appropriate staff member within three days of the incident. See Special Report, Ex. 20 (OP-090124) at 5-6. If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. See id. at 6-7. If the inmate is still not satisfied, the inmate may file a grievance with the reviewing authority within fifteen days of the incident or of the staff's response to his RTS, whichever is later. See id. at 7-9. If the inmate remains dissatisfied with the result, the inmate may appeal to the ODOC Administrative Review Authority ("ARA") or, where appropriate, the chief medical officer within fifteen days of the reviewing authority's response. See id. at 11-12.

After this fourth step, the administrative procedure would be completed. Id. at 33. See

Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."). In specific instances explained in the grievance policy, the inmate may submit a grievance directly to the reviewing authority without informal resolution. See Special Report, Ex. 20, at 14-15.

The uncontroverted record shows that Plaintiff first submitted a sensitive/emergency grievance to ODOC's ARA, and the ARA determined the grievance was not a sensitive or emergency matter. Special Report, Ex. 21, at 1 (grievance response from ARA dated February 6, 2013). Consistent with ODOC's grievance policy, the ARA advised Plaintiff he must follow the regular grievance policy in submitting his grievance.

Plaintiff then submitted a Request to Staff ("RTS") dated February 14, 2013, to Ms. McGill. Plaintiff's Declaration in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Response")(Doc. # 44), Ex. 16 (ECF page 145). In this RTS, Plaintiff alleged that "on 1-29-13 in SHU#9 my life was put in danger when Mrs. McGill Lieutenant put inmate Williams . . . in the cell with me. Inmate Williams assaulted me, cutting me in my back several times." Id. As the action requested, Plaintiff stated Ms. McGill should "explain why my life was put in imminent risk of harm and I was cut in my back several times." Id. Plaintiff was advised in an undated response that he had used the wrong form and needed to use the updated form which was revised in January 2013 pursuant to ODOC 090124. Id.

On February 15, 2013, Plaintiff submitted another RTS to Case Manager Beebe in which he alleged the same subject matter and requested that "[i]t should be explained why

8

I'm being subjected to this imminent risk of harm putting my life in danger and injuries I suffered from the assault. I would also like a conference with Warden McCollum." Id. at Ex. 17 (ECF page number 146). Plaintiff was advised in an undated response that he had again used the wrong form and should resubmit his RTS on the proper form. Id.

On February 14, 2013, Plaintiff submitted a grievance to Defendant Warden McCollum. Special Report, Ex. 19, at 3. In his grievance, he requested that Defendant McGill "respond to RTS 1-30-13."[3] Id. In a written response to this grievance dated February 20, 2013, Defendant Warden McCollum advised Plaintiff that he had not attached an RTS to his grievance and that he had the opportunity to resubmit the grievance to correct this procedural deficiency within 10 days. Id. at 2. Plaintiff did not resubmit his grievance.

On February 18, 2013, Plaintiff submitted another RTS to Case Manager Beebe. Plaintiff's Response, Ex. 18 (ECF page number 147). The RTS is stamped that it was received on February 20, 2013. In this RTS, Plaintiff stated that "[o]n 1-29-2013 in SHU #9 lieutenant Mrs. McGill placed inmate Williams . . . in the cell with me after he told her he wasn't going to live with no one," that Mr. Williams "assaulted me cutting me several times," and inmate Williams "told SHU staff and Mrs. McGill Lt. that it would be trouble." Id.. As the action requested, Plaintiff stated "[i]t should be explained why I'm being subjected to this imminent risk of harm putting my life in danger and injuries I suffered from the assault. The

---

[3]Plaintiff has not alleged or provided any evidence of his submission of an RTS to Defendant McGill on January 30, 2013, and nothing in the record indicates Plaintiff submitted an RTS to any official at OSR on January 30, 2013. Even if he did so, Plaintiff states that he did not receive a response to the RTS. Thus, the alternative time limits prescribed in ODOC's grievance policy for the submission of a grievance "15 days [from] the date of the response to the [RTS] form" do not apply. See Special Report, Ex. 20, at 8.

9

assailant [should] be criminally prosecuted. I do not know whether there was any discrimination, conspiracy, or retaliatory motive but those possibilities should be investigated." Id. In a response to the RTS dated February 21, 2013, OSR official Beebe responded that "I do not have any control of who is placed and where in SHU. I do know that Mr. Williams is same race as you." Id. Plaintiff did not submit a grievance with respect to the response he received to this RTS.

Plaintiff next submitted a RTS to Defendant Tate dated February 18, 2013, and bearing two hand stamps indicating it was received on February 20, 2013 and also on February 21, 2013. Id., Ex. 19 (ECF page number 148). Plaintiff asserted in this RTS that he was assaulted by Mr. Williams after "Inmate Williams . . . told SHU staff and Mrs. McGill Lt. that it would be trouble" and "he wasn't going to live with no one." Id.. As the action requested, Plaintiff asked for an explanation of "why I'm being subjected to this imminent risk of harm," that the "assailant be criminally prosecuted," and that "any discrimination, conspiracy, or retaliatory motive . . . should be investigated." Id. In a response dated February 21, 2013, Defendant Tate stated that "[t]here is no conspiracy or any other motives towards you or any offenders that are in SHU." Id.

Plaintiff then submitted a grievance to Defendant Warden McCollum dated March 4, 2013. Id., Ex. 20 (ECF page number 149). In grievance number 13-17, which is hand-stamped as being received in the Warden's Office on March 6, 2013, Plaintiff alleged that he was assaulted by Mr. Williams on February 29, 2013, after Mr. Williams told Defendants McGill and Eakins "that he wasn't going to live with no one." Id. Plaintiff requested that he

10

be "criminally prosecuted" and that "any discrimination, conspiracy, or retaliatory motive" should be investigated. Id.

In a response to this grievance dated March 7, 2013, Defendant Warden McCollum advised Plaintiff that his grievance received March 6, 2013, was being returned unanswered because his RTS presented "[m]ore than one issue" and was presented "[o]ut of time from date of incident. Alleged incident is dated 1/29/2013 and Request to Staff received 2/21/2013." Id., Ex. 22 (ECF page number 153).[4]

Plaintiff submitted a grievance appeal to the ARA dated March 13, 2013. Id., Ex. 23 (ECF page number 154). Plaintiff alleges that he had "presented one issue, I was attacked and injured. I initially presented this issue to the (ARA) as a sensitive issue, on 2-13-2013. I was notified by the (ARA) that I must follow the regular procedure. On 2-18-2013 I submitted a Request to Staff to address the issue. This is within the 7 days allowed by the grievance procedure." Id.

The ARA advised Plaintiff in a response dated March 21, 2013, that his grievance was filed improperly because it was submitted "[o]ut of time from date of incident" and involved "[m]ore than 1 issue - only 1 issue allowed per grievance." Id., Ex. 24 (ECF page number 155). Plaintiff did not pursue the grievance policy's procedure for requesting the opportunity

---

[4] Although the RTS referred to by Warden McCollum in this grievance response bears hand-stamps indicating it was received on both February 20, 2013, and February 21, 2013, it would make no difference whether Warden McCollum relied on the February 20, 2013 date or on the February 21, 2013 date. Either date would have exceeded the time limit prescribed in ODOC's grievance policy for the submission of an RTS. See Special Report, Ex. 20, at 6 ("The [RTS] must be submitted within seven calendar days of the incident, and only one issue or incident is allowed per form.").

11

to submit a grievance that was found to have been presented out of time. See Special Report, Ex. 20, at 17-18.

A prison's grievance system cannot be bypassed simply by improperly filing an emergency grievance. See Brewer v. Mullin, 130 Fed.Appx. 265, 265-66 (10th Cir. 2005)(unpublished op.)("[Plaintiff] may believe that prison officials erred in deciding his issues were not emergencies, but that does not mean that he can simply ignore their determination and opt out of the grievance procedure."). Plaintiff's submission of an emergency/sensitive grievance did not complete the grievance procedure because he was advised his grievance did not amount to an emergency or sensitive grievance and he must therefore complete the regular grievance procedure provided by ODOC. Nor did his submission of an attempted emergency/sensitive grievance re-start the clock for submitting a timely RTS. ODOC's grievance policy does not provide any extension of the time period for properly filing an RTS when an inmate attempts to present an emergency/sensitive grievance. See Special Report, Ex. 20, at 14-15 (procedure for submitting emergency/sensitive grievance).

The grievance process established by ODOC required Plaintiff to comply with the policy's four-step grievance process. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). It is clear from the record that Plaintiff may have begun ODOC's grievance procedure but he did not properly complete it. Under these circumstances, Plaintiff "may not successfully argue

that he had exhausted his administrative remedies by, in essence, failing to employ them." Thomas, 609 F.3d at 1118 (quotation omitted). See Jernigan, 304 F.3d at 1032 (stating that "the doctrine of substantial compliance does not apply" to an inmate's failure to "*properly* complete the grievance process").

"'[U]nexhausted claims cannot be brought in court.'" Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)(quoting Jones v. Bock, 549 U.S. 199, 211 (2007)). Therefore, the Court should decline to review the merits of all of Plaintiff's claims as they are unexhausted. Furthermore, although dismissal of an action on the ground of lack of exhaustion is generally without prejudice, in this case ODOC officials determined that Plaintiff procedurally defaulted his claims because he did not submit his grievance within the time limits prescribed in ODOC's grievance policy. Therefore, the dismissal of Plaintiff's action should be with prejudice. See Kikimura v. Osagie, 461 F.3d 1269, 1289 (10th Cir. 2006), overruled in part on other grounds as recognized in Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)(observing that "procedurally defaulted" claims "may be dismissed . . . with prejudice"). See also Hinzo v. New Mexico Corr. Dep't, __ Fed.Appx.__, 2014 WL 930873 (10th Cir. 2014)(unpublished op.)(affirming dismissal of unexhausted claim with prejudice where claim was procedurally defaulted because deadline had expired for submitting grievance); Garcia v. Joseph, 404 Fed.Appx. 268 (10th Cir. 2010)(unpublished op.)(affirming dismissal of prisoner's § 1983 complaint pursuant to 28 U.S.C. §1915(e)(2)(B) for failure to state a claim due to prisoner's failure to exhaust available administrative remedies).

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss (Doc. # 35) be GRANTED and that Plaintiff's cause of action be DISMISSED with prejudice for failure to exhaust administrative remedies. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by April 30th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 10th day of April, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE